Paulette CASSEL–HESS, Appellant

v.

Norman K. HOFFER and Matthew D. Hoffer d/b/a 4507 Associates, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 25, 2011.
Filed May 7, 2012.

Richard C. Angino, Harrisburg, for appellant.

Elizabeth Snover, Lemoyne, for appellees.

BEFORE: DONOHUE, OLSON and STRASSBURGER,* JJ.

OPINION BY OLSON, J.:

Appellant, Paulette Cassel–Hess, appeals from the order entered on March 29, 2011, granting summary judgment to Norman K. Hoffer and Matthew D. Hoffer, d/b/a 4507 Associates (collectively "Appellees"). We affirm in part, vacate in part, and remand.

On October 9, 2009, Appellant instituted the current action by filing a complaint against Appellees. As averred within the complaint, Appellees own land located at 4507 North Front Street, in Harrisburg, Pennsylvania.[1] Appellant's Complaint, 10/9/09, at ¶ 2. Appellant's property—which is located at 4601 North Front Street—is separated from 4507 North Front Street by "a narrow strip of flooded land." *Id.* at ¶ 3.

According to the complaint, prior to 2003, a protected wetland ran alongside the eastern border of Appellees' 4507 North Front Street property. *Id.* at ¶ 4.

---

* Retired Senior Judge assigned to the Superior Court

1. To create the property known as 4507 North Front Street, Appellees consolidated five contiguous parcels of land. Appellees' Motion for Summary Judgment, 9/16/10, at Exhibit D.

In 2003, however, Appellees began to construct a commercial office building on 4507 North Front Street and, during the construction of this building, Appellees filled the wetlands with soil. *Id.* at ¶ 5. As a result of the filling of the wetlands, Appellant avers, land to the south and north of Appellant's property began to flood. *Id.*

As stated within the complaint, Appellees finished all construction on the building in 2007. *Id.* at ¶ 6. Sometime in 2008 or 2009, however, Appellant began to notice that properties adjacent to her own land were flooded—thus resulting in "mosquito-infested standing water that [ ] significantly reduced the value of [Appellant's] Front Street property." *Id.* at ¶¶ 6–7. Appellant claimed that Appellees were liable for her damages "under the . . . law of trespass and negligence, including the well-established law of real estate which precludes a landowner from interfering with the natur[al] movement of surface water so as to detrimentally affect other conjoining or nearby landowners." *Id.* at ¶ 13. Further, Appellant requested that the trial court issue an injunction to "abate and prevent the flooding of [Appellant's] land and/or the adjoining mosquito-infected lake."[2] *Id.* at Wherefore Clause.

Appellees answered Appellant's complaint and denied liability. Moreover, Appellees pleaded new matter and asserted that all of Appellant's claims were barred by the applicable two-year statute of limitations. Appellees' Answer and New Matter, 1/29/10, at ¶ 16.

Discovery commenced. During discovery, it was revealed that Appellant obtained title to 4601 North Front Street on April 8, 2008, *via* executor's deed. As the deed recites, Appellant's husband—Boyd R. Hess—died testate on February 8, 2007

and devised the 4601 North Front Street property to Appellant. Appellees' Motion for Summary Judgment, 9/16/10, at Exhibit H. Prior to the devise, 4601 North Front Street had been Mr. Hess' separate property, as Mr. Hess purchased the property in 1983—well before his 2005 marriage to Appellant. Appellant's Deposition, 3/22/10, at 9–10 and 13.

Further, during Appellant's deposition, Appellant testified as to the time when she and her late-husband first noticed the "mosquito-infested lake." As Appellant testified, she first visited the 4601 North Front Street property in 2000, when she and Mr. Hess were dating. Appellant's Deposition, 3/22/10, at 14–15. Appellant testified that, at this time, there was no "mosquito-infested lake" on any surrounding property. Rather, Appellees' land contained a canal-like area—where water would congregate in "a little wet spot" and then drain to the north. *Id.* at 22–23. In 2004, however, Appellees completed the main construction on their office building and "[s]hortly after the building was put in[, the 'little wet spot'] just got bigger and bigger and bigger" until the canal-area formed what is "a huge lake now." *Id.* at 22–25.

Appellant testified that she first experienced a problem with mosquitos in 2004 or 2005—which is "[w]hen [the canal-area] became a pond." *Id.* at 43–44. According to Appellant, the mosquitos are the result of the fact that the lake is simply "trapped . . . standing water" that continues to "get[ ] bigger" over time. *Id.* at 44. Further, Appellant testified that the water became trapped in 2004 or 2005 and, since that time, the water has never drained from the canal-area. *Id.* at 26–27 and 44.

---

**2.** Appellees concede that, within Appellant's complaint, Appellant properly pleaded that the standing water accumulated on her own property. *See, e.g.,* Appellees' Motion for Summary Judgment, 9/16/10, at ¶¶ 16 and 37.

As Appellant testified, she is afraid that, "if [the lake] keeps coming forward, filling up … it is going to come up onto my property and into [my] building." *Id.* at 45. Indeed, Appellant commissioned a property survey in 2008 and, from this survey, Appellant testified that she "think[s]" that the lake now envelops the southeastern corner of her property. *Id.* at 31–32.

Following the completion of discovery, Appellees filed a motion for summary judgment and claimed that they were entitled to judgment as a matter of law. As Appellees argued, the facts of record prove that the standing water is a "permanent condition" upon the land. Appellees' Motion for Summary Judgment, 9/16/10, at ¶ 41. Further, Appellees cited to Appellant's deposition testimony and claimed that Appellant admitted the permanent condition existed since at least 2004 or 2005, when the water became trapped and the canal began to fill. *Id.* at ¶ 36. According to Appellees, since Appellant took ownership of her property in 2008—well after the permanent condition came into being—Appellant did not have standing to sue for the trespass to her land. *Id.* at ¶ 69. In support, Appellees cited to *Beach Street Corp. v. A.P. Construction Co.*, 441 Pa.Super. 639, 658 A.2d 379 (1995) where this Court held that "any right to sue for [a permanent] trespass belongs solely to the possessor at the time of the trespass, and does not pass by deed." *Id.* at 380. Thus, according to Appellees, the right to sue for the trespass belonged to Appellant's husband and this right did not pass when Appellant obtained the deed to the property from her husband's estate. Appellees' Motion for Summary Judgment, 9/16/10, at ¶¶ 69–70.

Moreover, Appellees argued that Appellant's trespass and nuisance claims were barred by the applicable two-year statute of limitations. *Id.* at ¶ 77. As Appellees contended, Appellant admitted that she knew of the permanent condition since 2004 or 2005. Since Appellant did not file her complaint for property damage until October of 2009, Appellees argued that the asserted claims were time-barred. *Id.*

Appellant responded to the motion for summary judgment and, within her response, Appellant filed a cross-motion for summary judgment. According to Appellant's cross-motion, in a prior, unrelated case, Appellees had been sued for filling the wetlands and flooding another, neighboring property. Appellant's Cross–Motion for Summary Judgment, 10/6/10, at 11. In this unrelated case, the jury found Appellees liable for flooding the neighboring property and awarded the individual plaintiff both compensatory and punitive damages. Appellant argued that, given this prior jury determination, Appellees were collaterally estopped from denying responsibility for her harm. Appellant thus requested a judgment in her favor on the issues of "liability, factual cause, and outrageous conduct." *Id.* at 11–12.

Following oral argument, the trial court granted Appellees' motion for summary judgment and dismissed Appellant's complaint. Trial Court Order, 3/29/11, at 1. As the trial court reasoned, the permanent condition on the land existed prior to Appellant's ownership of the land. Trial Court Opinion, 6/13/11, at 4. Because of this, the trial court explained, Appellant did not have standing to bring the instant action and Appellees were entitled to a judgment as a matter of law.[3, 4] *Id.* Appel-

---

3. Given the trial court's ruling, the trial court did not address Appellees' statute of limitations arguments. Trial Court Opinion, 6/13/11, at 4 n. 1.

4. The trial court also expressly denied Appellant's cross-motion for summary judgment. Trial Court Order, 3/29/11, at 1.

lant filed a timely notice of appeal with this Court and now raises the following claims:

A. Does the [rule of *Borough of Nanty–Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (Pa.1932) ] ... preclude the grant of summary judgment that is based upon oral testimony for [Appellees] but inapplicable to [Appellant's] cross-motion for summary judgment based upon indisputable documentary evidence?

B. Do the factual issues of time, permanent injury, trespass, and nuisance preclude the grant of summary judgment for [Appellees]?

C. Do not the alternative theories of "nuisance" and/or continuing or intermittent trespasses, and/or first impression inheritance cause of action preclude the grant of summary judgment?

D. Did the trial court err in refusing to grant [Appellant's] cross-motion based upon indisputable survey documents?

Appellant's Brief at 4.

At the outset, we note that the issues Appellant raises above do not correspond with those she argues within her brief. Further, the above issues do not correspond with those Appellant preserved in her court-ordered concise statement of errors complained of on appeal.

In this case, the trial court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Trial Court Order, 4/20/11, at 1. Appellant's Rule 1925(b) statement declares:

1. The [trial c]ourt granted summary judgment in its March 29, 2011 [o]rder. . . .

2. The [trial c]ourt's grant of summary judgment based upon [Appellant's] lack of standing is error because there are factual issues that must be submitted to a jury.

3. The [*Nanty–Glo* d]octrine ... precludes the grant of summary judgment that is based upon oral testimony.

4. There are time and other factual issues that preclude the grant of summary judgment based upon whether or not [Appellant] has "standing."

Appellant's Rule 1925(b) Statement, 4/11/11, at 2.

A review of Appellant's Rule 1925(b) statement reveals that she has preserved only the following issues on appeal: 1) whether "[t]he [*Nanty–Glo* d]octrine ... precludes the grant of summary judgment" and 2) whether the trial court erred in granting summary judgment upon the issue of standing.[5] Any additional claim raised within Appellant's brief—including the entire issue of whether the trial court erred in denying Appellant's cross-motion for summary judgment—is waived. Pa. R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement and/or not raised in accordance with the provision of [Rule 1925(b)(4) ] are waived").

Appellant argues that the trial court erred in granting Appellees' motion for summary judgment. We review Appellant's claims under the following standard:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to

---

**5.** We note that Appellant's brief provides argument on both of these issues.

judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Englert v. Fazio Mech. Serv's, Inc.*, 932 A.2d 122, 124 (Pa.Super.2007) (citations omitted).

■ Appellant first claims that the trial court erred in granting summary judgment, as the court's ruling was based upon Appellant's oral deposition testimony. According to Appellant, the consideration of this oral testimony violated the rule of *Nanty–Glo*, "which holds that a court may not summarily enter a judgment where the evidence depends upon oral testimony." *Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900, 903 (1989).

Appellant's claim lacks merit, given that "the deposition testimony offered in support of [Appellees' motion for] summary judgment constitut[ed the] adverse admission[s] of a non-moving party." *Commonwealth, Dep't of Envtl. Res. v. Bryner*, 149 Pa.Cmwlth. 59, 613 A.2d 43, 46 n. 4 (1992); *Larsen v. Phila. Newspapers, Inc.*, 411 Pa.Super. 534, 602 A.2d 324, 338 (1991) ("[a] motion for summary judgment may properly be supported by admissions contained in the depositions or affidavits of the opposing party or the opposing party's witnesses"). Certainly, Appellees were entitled to support their summary judgment motion—and the trial court was entitled to grant the summary judgment motion—upon Appellant's own sworn admissions. Appellant's first claim fails.

■ Next, Appellant claims that the trial court erred in granting summary judgment based upon the issue of standing.

With respect to Appellant's trespass claim, we agree that the trial court erred in granting summary judgment upon the issue of standing. Further, since there exists a genuine issue of material fact as to when the lake waters began to intrude upon Appellant's property, the statute of limitations does not, as a matter of law, bar Appellant's trespass claim. We must, therefore, vacate the portion of the trial court's order that dismissed Appellant's trespass claim. We, however, affirm the portion of the trial court's order that dismissed Appellant's nuisance claim. We do so because, even assuming that Appellant has standing to pursue the nuisance claim, the statute of limitations has expired on the claim. *See Lilliquist v. Copes–Vulcan, Inc.*, 21 A.3d 1233, 1235 (Pa.Super.2011) ("appellate court may affirm decision on any grounds supported by the record on appeal").

■ Prior to analyzing Appellant's arguments, we note the fundamental distinction between the claims of trespass and nuisance. As our Supreme Court has explained:

The term nuisance signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom. In legal phraseology, the term "nuisance" is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his own improper, indecedent, or unlawful personal conduct, working an obstruction or injury to a right of another, or of the public, and

producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage. Nuisance is distinguishable from [trespass]. The distinction between trespass and nuisance consists in the former being a direct infringement of one's right of property, while, in the latter, the infringement is the result of an act which is not wrongful in itself, but only in the consequences which may flow from it.

*Kramer v. Pittsburgh Coal Co.*, 341 Pa. 379, 19 A.2d 362, 363 (1941) (internal citations, quotations, and corrections omitted).

In the case at bar, the main body of the "mosquito-infested lake" exists on Appellees' property—and the lake has (allegedly) only intruded upon a small corner of Appellant's property. *See* Appellant's Deposition, 3/22/10, at 31–32; Appellees' Motion for Summary Judgment, 9/16/10, at ¶¶ 38–39. Appellant's claim of trespass, thus, relates only to the lake waters that have (allegedly) infringed upon Appellant's property; Appellant's nuisance claim concerns the area of the "mosquito-infested lake" that exists outside the confines of Appellant's property.

As a further preliminary issue, it must be determined whether the "mosquito-infested lake" constitutes a permanent change in the condition of the land or whether it may be defined as a continuing trespass or nuisance. The issue is important for both statute of limitations and standing purposes. With respect to the statute of limitations, our Supreme Court has explained:

a continuing trespass must be distinguished from a trespass that effects a permanent change in the condition of the land. The latter, while resulting in a continuing harm, does not subject the trespasser to liability for a continuing trespass. [*See* Restatement (First) of Torts § 162 (1939)]. If a nuisance at the time of creation is a permanent one, the consequences of which in the normal course of things will continue indefinitely, there can be but a single action therefor to recover past and future damages and the statute of limitations runs against such cause of action from the time it first occurred, or at least from the date it should reasonably have been discovered.

*Sustrik v. Jones & Laughlin Steel Corp.*, 413 Pa. 324, 197 A.2d 44, 46–47 (1964). In other words, our Supreme Court has held that—for a trespass that effects a permanent change in the condition of the land—the statute of limitations begins to run at the time of the original trespass. The possessor of land may then institute but "a single action ... to recover past and future damages" for a permanent trespass. Further, our Supreme Court has held that the same is true where the possessor seeks to recover for a permanent nuisance. *Cass v. Penna. Co.*, 159 Pa. 273, 28 A. 161, 163 (1893) (plaintiff claimed that a private bridge, erected on a street in front of plaintiff's building, was a nuisance; Supreme Court held that the statute of limitations began to run on the nuisance claim "no later than the time when the work ... had progressed to such an extent as to obstruct ingress and egress to and from [plaintiff's] property to the streets").

The issue of permanency is also vital for determining standing. Indeed, since a permanent trespass "once and for all produce[s] a permanent injury to the land," only the possessor of the land at the time of the trespass has a cause of action for the trespass. Restatement (Second) Torts § 162 ("[a] trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass, or to the land or to his things"). As the comment to Restatement (Second) of Torts § 162 declares:

Thus, if one, without a privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation, or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since his conduct has once for all produced a permanent injury to the land, the possessor's right is to full redress in a single action for the trespass, and a subsequent transferee of the land, as such, acquires no cause of action for the alteration of the condition of the land. Restatement (Second) of Torts § 162 cmt. e; *see also Beach Street Corp.*, 658 A.2d at 380 ("[i]t is well-settled that any right to sue for the [permanent] trespass belongs solely to the possessor at the time of the trespass, and does not pass by deed").

■ To determine whether the action concerns a "permanent change in the condition of the land"—or whether the action alleges separate, independent injuries—a court must consider a variety of factors, including: 1) the character of the structure or thing which produces the injury; 2) whether "the consequences of the [trespass/nuisance] will continue indefinitely"; and, 3) whether the "past and future damages" may be predictably ascertained. *Sustrik*, 197 A.2d at 46–47 and *Graybill v. Providence Twp.*, 140 Pa.Cmwlth. 505, 593 A.2d 1314, 1316–1317 (1991) (*en banc*), *affirmed per curiam*, 533 Pa. 61, 618 A.2d 392 (1993).

For example, in *Beach Street*, the defendant dumped mounds of soil upon plaintiff's land and the plaintiff filed a claim for trespass. We held that "the trespass was permanent, not continuing, since the dumping was completed by February of 1988 and had effected a permanent change

to the condition of the land." *Beach Street Corp.*, 658 A.2d at 379–380.

Viewing *Beach Street* through the lens of the *Sustrik/Graybill* factors, it is clear that the invasion in that case was a permanent trespass since: the invasion occurred once and resulted in a permanent, visible change to the land; the "consequences" of the trespass would continue indefinitely (until the trespass was abated); and all "past and future damages" resulting from the trespass could have been immediately ascertained. *Sustrik*, 197 A.2d at 46–47 and *Graybill*, 593 A.2d at 1316–1317.

Contrariwise, in *Graybill*, the Commonwealth Court concluded that the plaintiff alleged a continuing trespass. *Graybill*, 593 A.2d at 1318. In that case, the plaintiff filed a trespass action and sought damages for the "flooding on his property caused by [a property] subdivision." *Id.* at 1315. As the Commonwealth Court explained, the claim was for a continuing trespass, given that the plaintiff alleged "fewer than ten incidents of flooding over a period of almost four years" and the Commonwealth Court found it "impossible to know exactly how many incidents of flooding would occur [or] the severity of them." *Id.* at 1317–1318. The Commonwealth Court thus reasoned that—since it could neither determine whether the trespasses would continue in the future nor calculate the full amount of damages in a single action—the trespass was continuing.

In the case at bar, Appellant admits that the "mosquito-infested lake" is "a permanent feature" upon the land. Appellant's Brief at 30. Appellant, however, claims that the date upon which it became permanent is unknown.

■ We agree with the trial court that, at the time of its formation, the lake constituted a permanent change in the condition of Appellees' land. Thus, with respect

to Appellant's nuisance claim, the two-year statute of limitations began to run (at the latest) in 2005—which is when, as Appellant admits, "the water got trapped [in the canal-area] and . . . [the area] became a pond." Appellant's Deposition, 3/22/10, at 43–44. Indeed, Appellant not only admits that the lake formed on Appellees' land in 2005, but Appellant also admits that her mosquito infestation began at the moment the lake was created. *Id.* Further, Appellant admits that, since the time of formation, the waters have never drained from the lake-area. *Id.* at 25–27.

Thus, in this case, Appellant has admitted that: 1) the lake has been a permanent feature of the Appellees' land since 2005; 2) since 2005, the consequences of the alleged nuisance—*i.e.* the standing water and the mosquitos—have been unremitting and "will continue indefinitely"; and, 3) at the time the lake was formed, all damages the possessor of land suffered—or would thereafter suffer—for the nuisance could be predictably ascertained. *Sustrik,* 197 A.2d at 46–47 and *Graybill,* 593 A.2d at 1316–1317. The facts of this case thus demonstrate that, at the time of formation, the lake constituted a permanent change in Appellees' land.

As the lake has (allegedly) been a permanent nuisance since 2005, the statute of limitations began to run at the time the nuisance was created. *Cass,* 28 A. at 163. Given that the statute of limitations for nuisance is two-years, the claim became time-barred in 2007. 42 Pa.C.S.A. § 5524(7). Thus, even assuming that Appellant had standing to bring her nuisance claim, the claim—which was filed in October of 2009—was barred by the statute of limitations. The trial court correctly dismissed this claim at the summary judgment stage.

■■■■■ We must, however, vacate the portion of the trial court's order that dismissed Appellant's trespass claim. We do so because Appellees have produced no evidence as to when the lake waters first encroached—or trespassed—upon Appellant's land.[6] Indeed, during Appellant's March 22, 2010 deposition, Appellant admitted only that she "think[s]" a portion of her southeast property is "under water

---

**6.** The trial court erred in concluding that Appellant lacked standing to sue for trespass. First, it is clear that Appellant became the owner of the property in April 2008 when the property was deeded from her late husband to her *via* an executor's deed. Moreover, we also note that standing to sue for trespass is not limited to the owner of the property. Rather, Section 162 of the Restatement (Second) of Torts provides:

A trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass, or to the land or to his things, or to members of his household or to their things, caused by any act done, activity carried on, or condition created by the trespasser, irrespective of whether his conduct is such as would subject him to liability were he not a trespasser.

Restatement (Second) of Torts § 162.

Further, Section 157 of the Restatement (Second) of Torts defines a "possessor of the land" as follows:

a person who is in possession of land includes only one who

(a) is in occupancy of land with intent to control it, or

(b) has been but no longer is in occupancy of land with intent to control it, if, after he has ceased his occupancy without abandoning the land, no other person has obtained possession as stated in Clause (a), or

(c) has the right as against all persons to immediate occupancy of land, if no other person is in possession as stated in Clauses (a) and (b).

Restatement (Second) of Torts § 157.

Hence, for standing purposes in the case at bar, the determinative factor is not when Appellant became the owner of the land, but when Appellant began her "occupancy of [the] land with intent to control it." *Id.*

now." Appellant's Deposition, 3/22/10, at 30–31 (emphasis added).[7]

As stated above, Appellees filed a motion for summary judgment arguing Appellant **admitted** that, since 2005, the standing water has constituted a permanent trespass upon Appellant's land. Here, however, there is no evidence to support this position. Instead, Appellant only admitted that—as of March 22, 2010—she believed the water was on her land. Further, there is a genuine issue of material fact as to whether Appellant's trespass claim was filed within the two-year statute of limitations. We must, therefore, vacate the portion of the trial court's order dismissing Appellant's trespass claim and remand for further proceedings.

Order affirmed in part, vacated in part, and remanded.

Jurisdiction relinquished.

7. Appellees concede that—viewing Appellant's deposition testimony in the light most favorable to Appellant—there exists a genuine issue of material fact as to whether (and to what extent) the waters have intruded upon Appellant's property. Appellees' Motion for Summary Judgment, 9/16/10, at ¶ 39.