## Cronlund v. Leavitt

C.P. of Monroe County, No. 2721.

*Kimberly Fedrigon,* for plaintiffs
*Marshall E. Anders,* for defendants

WILLIAMSON, *J.*, April 10, 2013—This matter comes before the court on plaintiffs' motion for injunctive relief and damages regarding a property line dispute. We previously issued an opinion and order dated September 23, 2012, denying plaintiffs' request for a preliminary injunction following a hearing held August 1, 2012. The defendants filed a timely motion for reconsideration requesting this court enter a final order as to the underlying merits of the suit. A rule was issued to show cause why this court should not reconsider its September 23, 2012 opinion and order. The plaintiffs filed a response indicating no objection to a final order on the merits of the case. No stipulation was filed by the parties. However, at argument scheduled on the motion, both parties agreed the prior ruling that only addressed the preliminary injunction should be modified, and requested the court rule on the merits of the underlying complaint and counterclaim and issue a final order in this matter. This court granted the request by order dated April 1, 2013. This opinion and order follows.

Plaintiffs allege they were entitled to an injunction and damages to prevent a trespass, as they would suffer an irreparable harm and injury without the requested relief. Specifically, the plaintiffs requested an order directing defendants to refrain from entering onto plaintiffs' real property and cutting down trees and disturbing the landscape. The complaint alleged an action in trespass, continuing trespass, and permanent trespass. Plaintiffs also allege intentional infliction of emotional distress. The complaint sought equitable relief in the form of an injunction, and monetary damages.

## PROCEDURAL BACKGROUND

This court, by the Honorable Linda Wallach Miller, initially set a hearing date on the motion for injunctive relief for May 16, 2011. The hearing was first continued to August 30, 2011, and again to September 26, 2011. The court, by order dated September 20, 2011 continued the hearing indefinitely, pending a ruling on defendants' petition to file a pleading out of time. The parties also needed time to finalize a survey of the properties.

On December 16, 2011, plaintiffs filed a petition for a hearing stating the surveys were done. This court entered an order January 3, 2012, scheduling a hearing for January 30, 2012. At the time of the hearing on January 30, 2012, it was determined that there were multiple issues outstanding that effected the case procedurally. The parties then agreed to cancel the hearing on the preliminary injunction and to hold it at a later time. This court, by order dated March 7, 2012, resolved all of the outstanding procedural matters, and on May 22, 2012, plaintiffs filed a petition to schedule a hearing on the preliminary injunction matter. A hearing on the request for injunctive relief was scheduled for August 1, 2012, and on that date, both parties appeared and provided testimony. The parties have agreed the evidence at that hearing is all of the evidence in this matter, and that this court should rule on the underlying merits of the complaint, and defendants' counterclaim by final order.

## FACTUAL BACKGROUND

The brief facts of this case are as follows: Plaintiffs Kenneth and Sue Cronlund own lot 764, Emerald Lakes in Tobyhanna Township, Monroe County, Pennsylvania.

Defendants, Jeffrey and Stacey Leavitt own Lot 763, which is immediately adjacent to the plaintiffs' lot. The plaintiffs allege that the defendants went onto their property and cut or damaged trees on their property, and continue to trespass on their lot. The plaintiffs also allege that the defendants have a boat dock that is too close to the plaintiffs' property line, in violation of association rules and regulations.

The defendants counter that the area of disturbance is not on the plaintiffs' property. The defendants allege that the disturbed area is common area owned by the Emerald Lakes Association, Inc. ("Association"). The defendants also assert that the trespass claims are time-barred. Finally, the defendants claim the boat dock neither encroaches on plaintiffs' land, nor is an enforceable violation of Association rules. Defendants' counterclaim seeks damages, including attorney's fees. The court will first address the defense that the claims are time-barred under the applicable statute of limitations, and the effect, if any, on this case.

## APPLICATION OF STATUTE OF LIMITATIONS

The defendants assert that the plaintiffs' complaint must be dismissed since it was filed outside the two year statute of limitations period. The plaintiffs' complaint asserts that the defendants trespassed on their property and damaged a number of trees and shrubs that allegedly blocked the defendants' view of the lake. An individual must commence a cause of action for a claim of trespass within two years of the date of the alleged trespass. 42 Pa. C.S.A. §5524(4). However, our courts have recognized two different types of trespass and have held that the

time in which the statute of limitations begins to toll will differ depending on which trespass is alleged. A plaintiff can assert either a permanent trespass or a continuing trespass. Accordingly, the court must ascertain which type of trespass is being alleged before determining whether the statute of limitation has expired. In the matter before us, the plaintiffs assert both a continuing trespass and a permanent trespass.

The distinction between a continuing trespass and a permanent trespass is discussed in the Restatement (Second) of Torts, which states a permanent trespass occurs when a person ". . . without privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation, or removes earth or some other substance from the land . . ." Restatement (Second) of Torts §162, comment (e). The trespass is considered permanent rather than continuing when the individual's conduct has procured a permanent injury to the land and redress for that permanent harm can be adequately obtained in a single action. Restatement (Second) of Torts §162, comment (e). The two-year statute of limitations will run from the date of the permanent harm.

A continuing trespass involves multiple trespasses that result in separate and independent injuries. *See Cassel-Hess v. Hoffer*, 44 A.3d 80, 87 (Pa. Super. 2012). The statute of limitations does not start until all trespass is abated. *Id.* To ascertain whether a trespass is permanent or continuing, the court should consider the following factors: "1) the character of the structure or thing which produces the injury; 2) whether 'the consequences of the

[trespass/nuisance] will continue indefinitely'; and, 3) whether the 'past and future damages' may be predictably ascertained." *Cassel-Hess*, at 87, citing, *Sustrik v. Jones & Laughlin Steel Corp.*, 197 A.2d 44, 46-47 (Pa. 1964) and *Graybill v. Providence Twp.*, 593 A.2d 1214, 1316-1317 (Pa. Cmwlth. 1991) (en banc), *aff'd per curiam*, 618 A.2d 392 (Pa. 1993). The court should also look at the regularity of the harm that results from the alleged trespass to determine whether the harm occurred in one instance and remains to exist on the property or whether the harm happens frequently and predictably or only intermittently. *Graybill*, at 1316-1317.

In *Cassel-Hess*, the Superior Court compared the trespass involved in *Beach Street Corp. v. A.P. Const. Co., Inc.*, 658 A.2d 379 (Pa. Super. 1995), which constituted a permanent trespass, against the continuing trespass found in *Graybill*. After reviewing the facts from Beach Street Corp. and considering them in light of the factors provided for in *Sustrik* and *Graybill*, the Superior Court reaffirmed the holding in *Beach Street Corp.* and held that a permanent trespass occurred. *Cassel-Hess*, 87. In reaching that determination, the court highlighted the following facts: "the invasion occurred once and resulted in a permanent, visible change to the land; the 'consequences' of the trespass would continue indefinitely (until the trespass was abated); and all 'past and future' damages resulting from the trespass could have been immediately ascertained." *Id.*, *citing, Sustrik* at 46-47 and *Graybill*, at 1316-1317.

In contrast to the opinion in *Beach Street Corp.*, the Commonwealth Court in *Graybill* concluded the actions

taken by the defendant constituted a continuing trespass since the court could not determine whether the trespass would continue in the future and could not calculate the full amount of damages in a single action. *Cassel-Hess,* 87. In *Graybill,* the plaintiff alleged the flooding on his property was caused by a structure the defendant built on his property and that the flooding occurred less than ten times over a four year period. Since the Commonwealth Court found it "impossible to know exactly how many incidents of flooding would occur [or] the severity of them," the court determined the flooding was a continuing trespass caused by the structure located on the defendant's property. *Graybill,* at 1317-1318.

In the matter before this court, the plaintiffs are asserting that the defendants have "repeatedly entered upon Lot 764 without license or permission to do so and destroyed and/or damaged trees and shrubs on Plaintiffs' property." [Plaintiffs' complaint, 3/25/11, ¶5.] Additionally, the plaintiffs aver that "Defendants have repeatedly and continuously acted to physically enter upon Plaintiffs' property for the sole purpose of destruction of trees and shrubs, despite clear requests and directives to cease and desist." [Plaintiffs' complaint, 3/25/11, ¶8.] Finally, the plaintiffs allege that "Defendants continue to intentionally enter upon Plaintiffs' Lot 764 without privilege, license or invitation to do so," and "continue to defy any and all requests and demands to remove the items of trespass, or to discontinue the ongoing trespass." [Plaintiffs' complaint, 3/25/11, ¶¶10-11.]

However, the testimony at the hearing showed that most of the trees and shrubs removed or cut were on lands of

the Association, and not on lands owned by the plaintiffs as will be addressed later in this opinion. The testimony also showed that the trees and shrubs removed or cut had stopped prior to the hearing. The cutting of trees and removal of shrubs is an incident that is over once it is done, and not a continuing trespass. The "continuing trespass" appeared limited to the upkeep of land and landscaping timbers placed on the property line of both lots which will be addressed below. We find, based upon the testimony, that at most, any damage to any trees and shrubs that were actually on the plaintiffs' property was limited to removal of one shrub. This removal was a permanent trespass. Testimony showed the removal of the shrub on plaintiffs' property occurred more than two (2) years prior to the filing of the complaint. As such, the removal of the shrub on plaintiffs' property is time barred by the applicable statute of limitations. We find the other trees and shrubs that were disturbed were not on the plaintiffs' lot as discussed below.

However, since the suit also involves a disagreement as to property lines and who owns the area of the alleged trespass, we must also address other matters. There are issues that could make this a continuing trespass with regard to the boat dock, and defendants' coming onto the plaintiffs' property, including allegations defendants were maintaining an area of plaintiffs' land as well as placing landscape timbers on their land. There is also a dispute regarding damage to trees and shrubs near the lake.

It is pertinent to note that plaintiffs list their primary residence as being 145 Crest Road, Wrightstown, Pennsylvania and defendants' primary residence as 3287

Harbor Point Road, Baldwin, New York 11510. Therefore, it is evident that neither party considers the properties located at the Emerald Lakes development a primary residence, rather, they consider the properties "vacation" or "seasonal" homes. We believe this is relevant since it is entirely possible that there are times when the plaintiffs are present on the Emerald Lakes property when the defendants are not present and vice versa. Thus, it may not become immediately evident when defendants may trespass or whether there is a resulting harm and what that harm is until the plaintiffs return to the property, or actually witness them on the property. This court can only be guided by the testimony at the hearing.

Plaintiffs have alleged the location of the boat dock is a continuing trespass. If it was on the plaintiffs' property, it would be a continuing trespass, and thus not time barred. Plaintiffs have also alleged that defendants continue to come onto their property, including cutting grass and placing landscape timbers thereon. If proven, this would also be a continuing trespass and not time barred. Finally, plaintiffs claim ownership to or rights in the additional areas in which trees and shrubs were allegedly cut. All allegations will be discussed below.

## INJUNCTIVE RELIEF - TRESPASS

The plaintiffs' motion for injunctive relief remains an outstanding matter that was cancelled generally until a number of outstanding preliminary matters were concluded. Those preliminary matters are now resolved. The injunctive relief was sought to prohibit defendant from certain actions. Although plaintiffs' petition for hearing did

not specifically state it was a motion for injunctive relief, this court granted the petition on the belief that the hearing was to consider plaintiffs' motion for injunctive relief. As stated previously, the plaintiffs' request for injunctive relief was effectively continued until the outstanding preliminary matters were concluded. Once those matters were ruled upon by this court, plaintiffs filed a petition for hearing. Accordingly, we find it appropriate to rule on plaintiffs' request for injunctive relief at this time, together with the full merits of all matters raised in plaintiffs' complaint and defendants' counterclaim, as requested by the parties.

To grant injunctive relief, the court must find each of the following pre-requisites have been established:

1. A right to relief is clear;

2. There is urgent necessity to avoid injury which is not compensable by damages;

3. Greater injury will occur from denial of the relief rather than granting the relief.

*Singleton vs. Lavan*, 834 A.2d 672 (Pa. Cmwlth. 2003); *Big Bass Lake Community Assoc. vs. Warran*, 23 A.3d 619 (Pa. Cmwlth. 2011).

In the matter before us we are not satisfied that all of the prerequisite conditions have been met and find that the plaintiffs have failed to establish a clear right to relief. Plaintiffs assert that the defendants have continued to trespass onto their property and maintained a dock that is too close to their property that violates the Association's rules and regulations. Based on the testimony presented during the hearing on August 1, 2012, we are not satisfied

that the plaintiffs have established a trespass action against defendants.

An individual will be liable for trespass if he "intentionally enters land in the possession of the other, or causes a thing or a third person to do so..." Restatement (Second) of Torts §158. Accordingly, two things must be present in a trespass action: first, an individual must intentionally enter the land owned by another and, second, the individual alleging the occurrence of a trespass must own the land that was trespassed. Pursuant to the Restatement (Second) of Torts, a person will be in possession of land if he:

(a) is in occupancy of land with intent to control it, or

(b) has been but no longer is in occupancy of land with intent to control it, if, after he has ceased his occupancy without abandoning the land, no other person has obtained possession as stated in Clause (a), or

(c) he has the right as against all persons to immediate occupancy of land, if no other person is in possession as stated in Clauses (a) and (b).

Restatement (Second) of Torts § 157.

The plaintiffs assert that the defendants entered onto their property and cut down trees and shrubs. We have found that one shrub was removed from plaintiffs' property, but it occurred more than two (2) years prior to filing of this suit and is thus time-barred. However, plaintiffs claim other areas have been disturbed and that defendants continue to come onto their land, so we will address this issue further. The defendants counter that property in which trees and shrubs were cut more recently is a "common area" owned

by the Association. Defendants also contend that the area they mow, trim, and have landscape timbers on, is their property. During the hearing both parties presented testimony from a qualified expert land surveyor and both experts submitted their reports, which were drafted for purposes of determining the parties' boundary lines.

The plaintiffs' expert, Michael Kafkalas, testified that he surveyed the property line of Lot 763 and 764 on four separate occasions, three of which were for other parties, and not related to the matter between the two parties in this action. Mr. Kafkalas most recently conducted a property line survey for Lot No. 764 for the plaintiffs on June 22, 2011. To perform the survey, Mr. Kafkalas relied on the metes and bounds set forth in the plaintiffs' deed, which was admitted as plaintiffs' exhibit 2. However, the deed references the metes and bounds for the property as being that which was set forth in the plot book recorded at vol. 23, p. 123 of the Monroe County Recorder of Deeds Office. Based on that plot book description, Mr. Kafkalas issued a survey report and created a map of the property line depicting the boundary lines of Lot No. 763 and Lot No. 764, which was admitted as plaintiffs' exhibit 1. That map also depicted the area referred to by the defendants as the "common area," (also referred to as the "green belt" in testimony). Although Mr. Kafkalas's report stated that the damaged trees were observed on the plaintiffs' lot, (Lot No. 764), the map indicates that the "damaged" trees were located in the "green belt" area, which was between the plaintiffs' property line, and the edge of the lake. Mr. Kafkalas admitted the damaged area as shown on the survey map was outside the metes and bounds/plot book

description of Lot 764 and was in fact on Association property. (At first, Mr. Kafkalas seemed to suggest the Lot 764 metes and bounds description went to the edge of the lake, but then agreed there is common area owned by the Association between the lot line for Lot 764 and the lake.) Mr. Kafkalas agreed the area of disturbance he saw was between the lot line and the lake as depicted on his survey map.

Additionally, the defendants presented their own expert, Barry Tompkins, who surveyed the property lines of Lot 763 for the defendants in December of 2011. Mr. Tompkins' expert report was admitted as defendants' exhibit 7 and the report mirrors Mr. Kafkalas's in that it clearly depicts a "green belt" area that begins at the edge of the boundary lines of Lot No. 763 and Lot No. 764 and extends to the shoreline. Mr. Tompkins testified the "greenbelt" area is owned by the Association. Mr. Tompkins also testified that the damaged trees he observed were located in that "green belt' area and were not located on the plaintiffs' property. Finally, the plot book map at vol. 23, page 123 was admitted as defendants' exhibit 5 which clearly shows a "green belt" area between the plaintiffs' and defendants' lots and the lake as depicted in both surveys. The testimony of both experts was convincing that the additional disturbance of trees and shrubs was in the "green belt." Therefore, this court is not convinced that plaintiffs own the area where these trees were allegedly cut.

The plaintiff, Kenneth Cronlund, testified he believed areas outside of the "green belt", and on his property, were disturbed by the defendants. This court finds the only instance that happened was the removal of a shrub

more than two years prior to filing of the suit, and it is time barred. We also find that based upon the testimony of the surveyors, the area mowed and maintained by the defendants and the area in which the landscape timbers are placed, is on defendants' lot, or right on the property line. Therefore, it is not a trespass onto plaintiffs' land.

Mr. Cronlund also testified that he believed the "green belt" area was part of his property. He stated that his belief was based on the language in the deed he received when he purchased the home. Although he agreed that the area at issue was not included in the metes and bounds portion of the deed, he testified that the following language entitled him to use and maintain the property referred to as the "green belt" area between his lot and the lake:

> "Together with the right to such lawful use of the land between the above described premises and the lake shore line of those bodies of water known as "Emerald Lakes," which land lies within the confines of the extension of the boundary lines of any adjacent lots... as such use may be offered by Grantor, its successors or assigns including said Emerald Lakes Association, Inc., under the following terms and conditions:

> (c) the proposed lawful use of such lands includes but is not limited to the right to clearing and landscaping and other uses to be prescribed by the Grantor, its successors and assigns including the said Emerald Lakes Association, Inc."

During questioning on cross-examination, Mr. Cronlund agreed that the language does not specifically and explicitly state he has the "exclusive" right to the land between his

property line and the lake. He stated he believed the ultimate purpose of the language was to grant him full rights to the property area in question, although admittedly, the "green belt" area between his property line and the lake shoreline is owned by the Association. We note the Emerald Lake Association, Inc. is not a party to this suit.

We do not agree with the plaintiffs' interpretation of the deed. If the plaintiffs have exclusive right to the "green belt" area, the area would have been included in the metes and bounds description of the property. Since that particular area of property was not included in the metes and bounds portion of their deed, the plaintiffs do not have exclusive control over that area of property. Furthermore, there was no specific language in plaintiffs' deed reserving such exclusive right or control to the plaintiffs. Thus, the plaintiffs are unable to establish that they possess the land where trees were cut as shown on the survey maps since the area in question was not conveyed to the plaintiffs in their deed.[1] Furthermore, the court was not convinced of any encroachment or disturbance of land actually owned by the plaintiffs. Plaintiffs had a vague allegation that defendants continue to trespass over their property line onto their property. However, plaintiffs have not convinced this court of those facts. Consequently, we find that the plaintiffs have failed to establish an essential element of their claim in trespass: that plaintiffs possessed the land that incurred the trespass or that defendants actually trespassed on their lands. Since the plaintiffs cannot establish this element, we find that the plaintiffs

---

1. We note that neither the complaint nor testimony supported any right of the plaintiffs to enforce rights of the Association for lands owned by the Association, including the "greenbelt" area.

have failed to establish the merit of their underlying claim for an injunction based upon Trespass.

The plaintiffs are also unable to prove an injury. Since the area in question is not owned by the plaintiffs, the plaintiffs cannot legally suffer harm. As a result, the plaintiffs are unable to sustain their burden to prove this element necessary for an injunction as well.

The plaintiffs have also asserted a trespass or encroachment of the defendants' boat dock. However, there was no testimony that the defendants' boat dock actually encroaches onto the plaintiffs' property. The allegations of the complaint and at hearing, were that the boat dock is simply too close to the plaintiffs' property line, in violation of the rules and regulations of the Association. The plaintiffs provided no proof of the Association rules and regulations, nor any right they may have to enforce a violation of Association rules and regulations. Therefore, the court cannot grant an injunction as to the defendants' boat dock.

## DAMAGES FOR TRESPASS

Since the plaintiffs were unable to show a trespass on their lands, no damages can be awarded. Furthermore, no testimony was put forth as to actual monetary damages incurred, and therefore, no damages can be awarded.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs failed to put forth any evidence as to emotional distress or damages resulting from same. Therefore, this claim will also be dismissed.

## COUNTERCLAIM

Defendants have raised a counterclaim. Defendants asserted plaintiffs trespassed on their property (Lot 763), committed slander of title, and abuse of process. Defendants request damages, including attorney's fees and costs.

We are constrained by the evidence presented, and while we rule in favor of the defendants on plaintiffs' complaint, there was no showing that defendants are entitled to any further relief. There was no convincing evidence that plaintiffs trespassed on lands of the defendants. Furthermore, the parties each have surveys now confirming the boundary lines of their respective properties that are clear and without question. Therefore, there is no harm at this time, and no slander of title. Finally, we find that plaintiffs brought their suit in good faith, without knowledge of the actual property lines and areas of disturbance until after surveys were performed. Plaintiffs based their claims on a mistaken belief as to property boundaries and ownership rights in common area of an association. Therefore, we do not find that plaintiffs' actions arise to the level of compensatory abuse of process. The counterclaim will be dismissed.

## ORDER

And now, this 10th day of April, 2013, following a reconsideration of order granted April 1, 2013, it is ordered and decreed as follows:

1. The opinion and order dated September 13, 2012 is hereby vacated;

2. On plaintiffs' request for injunctive relief and damages for trespass and intentional infliction of emotional distress, we find in favor of the defendants on all counts.

3. On defendants' counterclaim, we find in favor of the plaintiffs and the counterclaim is dismissed.

4. This shall serve as a final order and verdict in this matter.