J. A21021/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT AND MARYANN BERGER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| PECO ENERGY COMPANY, | : | |
| | : | |
| Appellee | : | No. 3778 EDA 2015 |

Appeal from the Order Entered January 28, 2016
In the Court of Common Pleas of Chester County
Civil Division at No.: 2014-04507

BEFORE: BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:            **FILED SEPTEMBER 22, 2016**

Appellants Robert and MaryAnn Berger, plaintiffs below, appeal from the Judgment entered January 28, 2016, after the entry of a compulsory nonsuit in favor of Appellee PECO Energy Company following a bench trial. We affirm.

The underlying facts, as summarized in the trial court's Pa.R.A.P. 1925(a) Opinion filed on January 15, 2016, are as follows:

> This trespass action was filed by Appellants, seeking relief for PECO's purported interference with their rights, as property owners, to use and enjoy their property as they wish and their ability to compel a trespasser to remove unwanted chattels from above, on or below the property. [Appellants sought a permanent mandatory injunction.]
>
> Appellants reside at 46 Blenheim Hill Lane in Malvern, Pennsylvania, a residence which they purchased in 2004. Blenheim Hill Lane is characterized as a flag lot with a long driveway serving two houses. In 2013, PECO entered

Appellants' property for purposes of installing a new underground electric cable located on the east side of the driveway. The old cable located on the west side of the drive was abandoned due to electric service reliability issues.

PECO's placement of the underground electric facilities is governed by an Easement entered into by PECO's predecessor, Philadelphia Energy Company, and the original property owners, the Feehrers. The Easement granted PECO:

> The uninterrupted right, liberty and privilege to install, operate, maintain, inspect, renew, repair and remove underground electric facilities required to supply electric service to the premises and those adjacent thereto.

Such rights were limited by three express conditions:

> The aforesaid rights are granted under and subject to the following conditions:
>
> (1) The location of the electric facilities to be installed hereunder shall be shown and delineated on plans prepared by Company copies of which will be in the possession of the parties hereto having first been approved by them.
>
> (2) The undersigned agree that the initial exercise of any of the powers and rights herein granted shall not be construed as fixing or limiting Company's rights and privileges hereunder.
>
> (3) The undersigned agree that no building or permanent structure shall be erected over the underground facilities.

The Easement was executed on behalf of the Feehrers, the original landowners, and Philadelphia Electric Company on June 23, 1978.

Trial Court Opinion, filed 1/15/16, at 1-3.

J. A21021/16

During a bench trial on August 26, 2015, the trial court granted PECO's oral Motion for Compulsory Nonsuit.[1]   Appellants filed a Post-Trial Motion, which the trial court denied on December 2, 2015.

Appellants filed a Notice of Appeal on December 18, 2015, prior to the entry of final judgment on January 28, 2016.[2]   Both Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants present three issues for our review:

1. Did the Court commit legal error in finding that the Easement permitted PECO to install the New Cable anywhere it wanted on the Bergers' property?

2. Did the Court commit legal error in concluding that any trespass committed by PECO would have been a permanent trespass, as opposed to a continuing trespass?

3. Did the Court commit legal error in requiring the Bergers to show actual harm in order to show a trespass and to show the insufficiency of money damages [to] obtain a mandatory injunction?

Appellants' Brief at 4.

Appellants first challenge the trial court's interpretation of PECO's easement.  We review the trial court's interpretation of the language in an

---

[1] **See** Pa.R.C.P. No. 230.1 (entitled "Compulsory Nonsuit at Trial").

[2] Although Appellants filed their Notice of Appeal prematurely, we will treat it as properly filed.  **See** Pa.R.A.P. 905 ("A [N]otice of [A]ppeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). We further note that the entry of final judgment is the proper appealable Order following the entry of a compulsory nonsuit.  **See Rachlin v. Edmison**, 813 A.2d 862, 864 n.1 (Pa. Super. 2002) (*en banc*) (final judgment is proper appealable order following the entry of nonsuit).

easement as a question of law; as such, our scope of review is plenary.

**PARC Holdings, Inc. v. Killian**, 785 A.2d 106, 112 (Pa. Super. 2001).

"[T]he same rules of construction that apply to contracts are applicable in the construction of easements[.]" **McNaughton Properties, LP v. Barr**, 981 A.2d 222, 227 (Pa. Super. 2009) (citation omitted).

> As with any contract the rights conferred by the grant of an express easement must be ascertained solely from the language of the deed, provided that the deed language is unambiguous. When the language is ambiguous, however, a court may resort to evidence of extrinsic circumstances as an aid to interpretation. When the purposes of an express easement are not specifically stated, the court must ascertain the objectively manifested intention of the parties in light of the circumstances in existence at the time of conveyance. Whether an ambiguity exists is a question of law subject to plenary review. However, resolution of conflicting parol evidence relevant to what the parties intended by an ambiguous provision is for the trier of fact.

**PARC Holdings**, **supra** at 112 (citations omitted).

The Honorable Jeffrey R. Sommer, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellants' challenge to his interpretation of the easement. After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. **See** Trial Court Opinion at 5-8, 14 (concluding that it properly granted compulsory nonsuit because: "(1) the Easement was unambiguous, allowing PECO to place the new electrical cable on the Appellants' property without

- 4 -

first submitting written plans and obtaining permission from Appellants, and (2) the Appellants did not show the existence of any injury or damages.").

Appellants next challenge the trial court's legal conclusion that any trespass by PECO would constitute a permanent rather than a continuing trespass, which would alter the availability of equitable remedies to Appellants. Appellants argue that if PECO's trespass is properly classified as a continuing trespass, they would be entitled to a mandatory injunction forcing PECO to remove the offending cable without a showing of harm; if the trespass is classified as a permanent trespass, as the trial court concluded, Appellants would be entitled to seek money damages after demonstrating harm.

"In reviewing a question of law, our standard of review is de novo and our scope is plenary." *WellSpan Health v. Bayliss*, 869 A.2d 990, 996 (Pa. Super. 2005). The Second Restatement of Torts explains the difference between a continuing and a permanent trespass as follows:

> A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land. Thus, if one, without a privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation, or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since his conduct has once for all produced a permanent injury to the land, the possessor's right is to full redress in a single action for the trespass, and a subsequent transferee of the land, as such, acquires no cause of action for the alteration of the condition of the land.

Restatement (Second) of Torts § 162 cmt. e (1965).

After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. **See** Trial Court Opinion at 8-11 (concluding PECO did not commit a trespass because PECO's entry was privileged pursuant to its rights under the easement; moreover, any trespass would have constituted a permanent trespass because PECO excavated land to place the cable and permanently changed the condition of the land).

In their third issue, Appellants aver that the trial court erred as a matter of law "in requiring the [Appellants] to show actual harm in order to show a trespass and to show the insufficiency of money damages [to] obtain a mandatory injunction[.]" Appellants' Brief at 4.

"Appellate review of the grant or denial of a permanent injunction is limited to determining whether the trial court committed an error of law." **WellSpan Health**, **supra** at 995-96.

A mandatory injunction is an extraordinary remedy that should be granted only in the "rarest of cases." **Summit Towne Centre, Inc. v. Shoe Show**, 828 A.2d 995, 1005 n.13 (Pa. 2003). Appellate courts exercise greater scrutiny over mandatory injunctions, which should be issued more sparingly than injunctions which are merely prohibitory in nature. **Id**. "Thus, in reviewing the grant of a mandatory injunction, we have insisted that a clear right to relief in the plaintiff be established." **Overland**

***Enterprise, Inc. v. Gladstone Partners, LP***, 950 A.2d 1015, 1020 (Pa. Super. 2008) (citation omitted).

After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. ***See*** Trial Court Opinion at 11-14 (concluding Appellants failed to satisfy any of the prerequisites for a permanent mandatory injunction, and failed to demonstrate any damages, injury, or "urgent necessity" for a mandatory injunction).

The parties are instructed to attach a copy of the trial court's January 15, 2016 Opinion to all future filings.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2016

ROBERT BERGER and : IN THE COURT OF COMMON PLEAS
MARYANN BERGER : CHESTER COUNTY, PENNSYLVANIA
     Plaintiffs :
 
     VS. : NO. 2014-04507
 
PECO ENERGY COMPANY :
     Defendant : CIVIL ACTION - LAW

Stuart D. Laurie, Esquire, on behalf of Plaintiffs
Jared Todd Hay, Esquire, on behalf of Defendant

Sommer, J.                                January **16**, 2016

## OPINION PURSUANT TO RULE 1925

### I. PROCEDURAL SETTING

This matter comes before this Court as a result of an appeal filed by Robert Berger and MaryAnn Berger (hereinafter "Appellants") on December 18, 2015, from the Order dated December 2, 2015, denying Appellants' post-trial motions following oral argument held on November 30, 2015. A non-jury trial in this matter was held on August 26, 2015, during which I granted Appellee PECO Energy Company's (hereinafter, "PECO") oral motion for compulsory nonsuit. On December 18, 2015, I issued an Order directing Appellants to file a Concise Statement of Matters Complained Of on Appeal. Appellants submitted a timely Concise Statement on January 7, 2015. The matter is now ready for determination.

### II. FACTS

This trespass action was filed by Appellants, seeking relief for PECO's purported interference with their rights, as property owners, to use and enjoy their property as they wish and their ability to compel a trespasser to remove unwanted

chattels from above, on or below the property.

Appellants reside at 46 Blenheim Hill Lane in Malvern, Pennsylvania, a residence which they purchased in 2004. Blenheim Hill Lane is characterized as a flag lot with a long driveway serving two houses. In 2013, PECO entered Appellants' property for purposes of installing a new underground electric cable located on the east side of the driveway. The old cable located on the west side of the drive was abandoned due to electric service reliability issues.

PECO's placement of the underground electric facilities is governed by an Easement entered into by PECO's predecessor, Philadelphia Energy Company, and the original property owners, the Feehrers. The Easement granted PECO:

> The uninterrupted right, liberty and privilege to install, operate, maintain, inspect, renew, repair and remove underground electric facilities required to supply electric service to the premises and those adjacent thereto.

Such rights were limited by three express conditions:

> The aforesaid rights are granted under and subject to the following conditions:
>
> (1) The location of the electric facilities to be installed hereunder shall be shown and delineated on plans prepared by Company copies of which will be in the possession of the parties hereto having first been approved by them.
>
> (2) The undersigned agree that the initial exercise of any of the powers and rights herein granted shall not be construed as fixing or limiting Company's rights and privileges hereunder.
>
> (3) The undersigned agree that no building or permanent structure shall be erected over the underground facilities.

2

The Easement was executed on behalf of the Feehrers, the original landowners, and Philadelphia Electric Company on June 23, 1978.

Appellants' Concise Statement claims that the court erred in six ways, summarized as follows:

1.     The Court erred by not granting Plaintiff's Motion for Summary Judgment.

2.     The Court erred by excluding testimony, evidence and admissions from PECO representative, Debra Morgan, whose testimony purportedly contradicted PECO's central litigation position that it was under no obligation to seek homeowner approval for relocating an electric cable from one side of the driveway to the other.

3.     The Court erred by granting Defendant PECO's oral motion for nonsuit and entering a verdict for Defendant for the following reasons:

      a.     The Court erred in its legal interpretation of the Easement when it found that the Easement's Condition #1 applied only to the original property owners, not Appellants, thereby permitting PECO to relocate the electric cable without obtaining homeowner approval.

      b.     The Court erred by requiring Appellants to demonstrate monetary damages as a result of PECO's alleged trespass or that monetary damages would not be sufficient to remedy PECO's alleged conduct.

4.     The Court erred in finding no trespass was committed by PECO.

5.     The Court erred in finding that PECO's conduct constituted a continuing trespass.

3

6.    The Court erred in disregarding the controlling authority of *Jones v. Wagner*, 624 A.2d 166 (Pa. Super. Ct. 1992).

Several of these issues will be combined and addressed together.

### III. ISSUE

Whether the Court's granting of PECO's motion for compulsory nonsuit should be affirmed.

### IV. HOLDING

Yes, the entry of compulsory nonsuit entered on behalf of PECO should be affirmed because Appellants failed to meet their burdens establishing a right to the relief requested.

### V. RATIONALE

A.    This Court did not Err in Denying Appellants' Motion for Summary Judgment

Appellants moved for summary judgment on July 14, 2015, requesting that this Court enter judgment in their favor as a matter of law as to the interpretation of Appellants' rights under the Easement. Finding the arguments to be lacking merit, Appellants' motion for summary judgment was denied. Appellants then raised the same issues at trial and, for the reasons discussed herein, the Court granted PECO's motion for compulsory nonsuit after determining that Appellants failed to establish a right to relief. Thus, the Court's analysis regarding denial of Appellants' motion for summary judgment is addressed below.

B.    This Court did not Err in excluding testimony, evidence, and admissions from Debra Morgan

This issue was not raised and/or briefed in Appellants' Post-Trial Motion and, therefore, it is deemed waived for purposes of appeal and need not be addressed

4

herein. See, *Diamond Reo Truck Co. v. Mid–Pacific Industries, Inc.*, 806 A.2d 423, 428 (Pa.Super.2002) (*quoting L.B. Foster Co. v. Lane Enterprises, Inc.*, 710 A.2d 55, 55 (Pa.1998)).

C.     This Court did not Err in Granting PECO's Oral Motion for Nonsuit

In granting PECO's oral motion for nonsuit at the conclusion of Appellants' case at trial, the Court found that (1) the Easement was unambiguous, allowing PECO to place the new electrical cable on the Appellants' property without first submitting written plans and obtaining permission from Appellants, and (2) the Appellants did not show the existence of any injury or damages. Appellants contend that I erred in granting PECO's nonsuit as a matter of law.

Pennsylvania Rule 230.1 of Civil Procedure governs compulsory nonsuits at trial. A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff's evidence. See, *Francioni v. Gibsonia Truck Corp.*, 372 A.2d 736 (Pa. 1977). A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Pa.R.C.P. No. 230.1(a), (c); see also, *Biddle v. Johnsonbaugh*, 664 A.2d 159 (Pa. Super. 1995) and *Orner v. Mallick*, 639 A.2d 491, 492 (Pa. Super. 1994). On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving "the benefit of every reasonable inference and resolving all evidentiary conflicts in [appellant's] favor." See, *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998).

At the outset of this analysis, it is highlighted that the parties agreed that the Easement is an unambiguous document which speaks for itself. As an unambiguous document, it is subject to the Court's interpretation as a matter of law. See, *Banks*

5

*Engineering Co., Inc., v. Polons*, 697 A.2d 1020, 1022 (Pa.Super.1997)(citations omitted), *appeal granted*, 706 A.2d 1210 (Pa. 1998). Appellants were not signatories to the Easement at issue. The document does not contain any grant of rights to the successors or assigns of the original landowners; in contrast, however, the Easement does include a grant of rights to the then existing company, but also to PECO, which is the successor to its prior company. Thus, I gave consideration to the fact that the drafters and negotiators of this document specifically granted successor rights to PECO and did not do the same for any successors or assigns of the original landowners. See, *Meeting House Lane, Ltd. v. Melso*, 628 A.2d 854, 857 (Pa. Super. 1993)("In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language in the document was chosen carelessly."). When the terms in an agreement are not defined, the Court should construe its terms "in accordance with their natural, plain and ordinary meaning." See, *Cordero v. Potomac Ins. Co. of Illinois*, 794 A.2d 897, 900 (Pa. Super. 2002).

Pursuant to the Easement, PECO's right to install the electric facilities in the first place was subject to the express condition that the location of the facilities to be installed had to be depicted on plans and approved by the original homeowners, and signatories of the Easement, in advance of installation. This is established by Condition #1. The Court pays particular attention to the words "parties hereto" and "having been approved by them" as unambiguously stating that Condition #1 granted the right of approval for the location of the electric facilities to the original homeowners, the Feehrers, as parties to the Easement. However, Condition #2 limits these rights to the initial exercise of the rights therein granted. Therefore, when Conditions #1 and #2

6

are read together, the effect is that, in its initial exercise of placing electric facilities on the property, PECO was obligated to submit plans to and obtain approval from the original landowners, the Feehrers. However, following the initial exercise of its rights regarding the placement of the electric facilities, PECO is not required to seek the same landowner approval. Indeed, I read Condition #2 to mean that PECO's rights were not restricted after the initial approval process was completed. Neither the Feehrers nor subsequent landowners, e.g. the Appellants, had further "prior approval" rights. Only PECO maintained the powers and rights originally granted. Appellants desire that I read Condition #1 in isolation, ignoring Condition #2 and the remaining provisions of the document. This I cannot do.

Appellants argue that my interpretation of the Easement grants PECO greater rights as against Appellants than it would have had against the original property owners. I disagree. To the contrary, Appellants maintain the same rights as those possessed by the original property owners. Where my interpretation differs from Appellants' is the understanding of the rights conferred upon the original property owners. The language of the Easement grants the right of approval to the property owners regarding the initial location of the electrical facilities. Such right was extinguished upon PECO's initial exercise of its powers and rights under the Easement, i.e. the original installation of the electric service and facilities. The Easement does not grant either the original property owners or subsequent property owners the right to prior approval for any future placement of electrical facilities.

Plaintiffs reduce the argument *ad absurdum*, claiming that under the Court's construction of the Easement, PECO is permitted the unfettered right to place any number of cables in any location PECO desires on the Appellants' 11 acre property,

7

including "under the shed, under the house, and under the swimming pool," or perhaps all of the above, without any consultation or approval from Appellants. These are simply not the facts at issue. Rather, PECO placed the cable on the opposite side of the driveway (from the old cable) following a determination that it was the only feasible location. Based upon this interpretation of the Easement and the rights granted thereunder, it was not incumbent on PECO to obtain Appellants' approval prior to placing the electric cable on the other side of the driveway. I did not err in so finding.

Appellants additionally argue that the Court erred in its finding that injunctive relief was not available to Appellants in the absence of proof of damages. In support of this claim, Appellants cite to *Jones v. Wagner* for the proposition that Pennsylvania law does not require the showing of physical harm or damage to the land before a landowner can enforce his right to freely enjoy his property. 624 A.2d, 166, 171. I do not dispute that this principle of law is set forth in *Jones*, but I disagree with its applicability here.

In *Jones*, a property owner brought a suit for compensatory damages against the adjoining landowner after the adjoining landowner trimmed owner's tree limbs to the extent they encroached upon his property. The trial court dismissed the complaint with prejudice upon preliminary objections and the Superior Court affirmed, holding that the law required no showing of physical harm or damage to land before the adjoining landowner could enforce his right to self help. See, *Id.* at 166. The plaintiffs in *Jones* sought monetary relief for the damage done to their trees and the trial court determined that such damages did not establish a cause of action. Id.

In its discussion, the *Jones* Court analyzed the continuing nature of the trespass at issue, branches overhanging the property lines. This was considered a

8

"continuing" trespass because tree limbs tend to grow back when trimmed and the encroachment is bound to recur. See, *Id.* at 170; see also, *Graybill v. Providence Twp.*, 593 A.2d 1314 (Pa. Commw. 1991)(recurring flooding on plaintiff's land caused by defendant's conduct is a continuing trespass). In so finding, the Superior Court determined that Pennsylvania law does not require the showing of harm in order for a property owner to state a cause of action based upon a continuing trespass. *Id.*

Here, however, I was not dealing with a continuing trespass and, therefore, I do not find *Jones v. Wagner* controlling as Appellants demand. Appellants are incorrect on several levels. First, Appellants contend that this Court erred in finding that PECO's conduct constituted a continuing trespass. To the contrary, however, for the reasons discussed above, I determined that PECO committed no trespass. To prevail on a cause of action for trespass, the plaintiff must demonstrate that the defendant (1) intentionally, (2) entered the property of another, (3) without the privilege to do so. See, *Kopka v. Bell Telephone Co. of Pa.*, 91 A.2d 232 (Pa. 1952). At trial, it was conceded that PECO intentionally entered the property of Appellants; however, under the Easement, it maintained a privilege to do so. Thus, no matter the nature of the alleged trespass by PECO, either continuing or permanent, such a trespass is not a trespass at all if the actor has obtained an Easement, thereby making its conduct privileged. Because Appellants could not satisfy their burden of proof in demonstrating that PECO committed a trespass, the entry of nonsuit was proper.

To the extent that the trespass must be characterized, I did not conclude that PECO's placement of the electrical cable constituted a continuing trespass as claimed by Appellants, but rather a permanent trespass. The concept of a "continuing trespass" is defined under the Restatement (Second) of Torts § 161, comment b.

9

(1965) which provides:

> The actor's failure to remove from land in the possession of another a structure, chattel or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land and ... confers on the possessor of the land an option to maintain a succession of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass.

A "permanent trespass" is defined by the Restatement (Second) of Torts § 162, comment e. (1965) as follows:

> A continuing trespass must be distinguished from a trespass which *permanently changes the physical condition of the land.* Thus, if one, without a privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since his conduct has once [and] for all produced a permanent injury to the land, the possessor's right is to [a] full redress in a single action for the trespass, and a subsequent transferee of the land, as such, acquires no cause of action for the alteration of the condition of the land (*emphasis added*).

Pennsylvania courts have adopted the above definitions. See, *Mancia v. Department of Transportation*, 517 A.2d 1381 (Pa. Cmwlth. 1986); see also, *County of Allegheny v. Merrit Construction Co.*, 454 A.2d 1051 (Pa. Super. 1982).

To determine whether a trespass is of a continuing or permanent nature, the court is to consider the following factors: "(1) the character of the structure or thing which produces the injury; (2) whether 'the consequences of the trespass will continue indefinitely'; and (3) whether the 'past and future damages may be predictably

10

ascertained.'"    See, *Cassell-Hess v. Hoffer*, 44 A.3d 80, 87 (Pa. Super. 2012). Considering the above factors, I determined that the alleged trespass constitutes a permanent trespass as it involved PECO performing an affirmative act, excavating a portion of the land, and permanently placing a new electrical cable underground. The placement of such cable occurred once and has permanently changed the physical condition of the land. Any claimed consequences of the placement of the electrical cable will purportedly continue indefinitely due to the permanent nature of the cable and any such damages, be they past or future, may be predictably ascertained. The above-cited examples demonstrate that "continuing" is synonymous with "recurring"; in contrast, "permanent" represents an enduring alteration to the land itself. Thus, if a trespass at all, the placement of an underground electrical cable constitutes a permanent trespass.

*Jones v. Wagner* analyzed the remedies available for a continuing trespass and determined that no showing of physical harm or damage to the land was required. 624 A.2d 166.   The *Jones* Court reasoned that equitable remedies are available to a property owner who suffers a continuing trespass because he is forced to repeatedly endure the trespass due to its recurring nature.   The same is not necessarily true where an aggrieved landowner seeks a mandatory injunction regarding a permanent trespass, the nature of which has caused an enduring alteration to the land. *Jones* neither addressed the issues presented by a permanent trespass nor the high burden required for a mandatory injunction.

Appellants were thus required to demonstrate the prerequisites of a permanent mandatory injunction. To prevail on a claim for a permanent mandatory injunction, the plaintiff must establish (1) a clear right to relief, (2) that there is an urgent necessity to

11

avoid an injury which cannot be compensated for by damages, and (3) that greater injury will result from refusing rather than granting the relief requested. See, *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137 (Pa. Cmwlth. 2008).

At trial, I found that Appellants failed to establish a single prerequisite for a mandatory injunction, let alone all three. First, Appellants clearly failed to demonstrate a clear right to relief. Indeed, I concluded just the opposite. As a matter of law, I interpreted the Easement in a manner which did not convey to Appellants the right of prior approval of PECO's placement of the electrical cable on Appellants' property. As a result, PECO maintained a privilege to enter the property and place the cable where it deemed feasible and appropriate. No trespass occurred and, accordingly, Appellants were not entitled to relief.

Even if Appellants did establish a trespass, the right to a mandatory injunction is not automatic. At trial, I further found that Appellants failed to demonstrate any "urgent necessity" for an injunction so as to avoid an injury which cannot be compensated for by damages. Appellants suffered no damages, monetarily or otherwise, and such fact was admitted at trial by Appellants. They were given the opportunity to demonstrate to this Court how the placement of the new cable interfered with their use and enjoyment of their property and/or any diminution in value of the property. They failed to do so. Consideration of this evidence, or lack thereof, was part and parcel of the analysis of whether the Appellants established an "urgent necessity" as required for a mandatory injunction. Under the facts presented and Appellants' concession at trial that they suffered no damages, there was clearly no "urgent necessity" for the requested relief. Further, the fact that Appellants sustained no compensable damages or any loss of the use and enjoyment of their property means that they were not able to demonstrate

12

to this Court that they were entitled to a mandatory injunction, an extraordinary remedy issued in only the rarest of cases. See, 15 Standard Pennsylvania Practice 2D, §83:9 (2005).

In a similar vein, Appellants failed to demonstrate that greater injury will occur from denial of the mandatory injunction than by granting it. Plain and simple, I concluded that Appellants suffered no injury, in any form, whatsoever. I deemed this action brought by Appellants to be the height of frivolity, where Appellants simply desired the new cable to be dug up and placed on the other side of the road, requiring excavation of the abandoned cable, for no other purpose than their own edification. The testimony at trial indicated that the current placement of the cable in no manner interfered with Appellants' use and enjoyment of the property other than the fact that the cable's placement without approval may have annoyed them. No trees, shrubs, or landscaping were disturbed. No fence was removed. No structure or landmark was relocated. It is difficult to conceive that greater injury would result from denial of the mandatory injunction when Appellants have suffered no injury in the first place.

Further, the remedy sought – forcing PECO to dig up and remove the operating underground cable from its current location and move it to an undetermined location – would serve to disrupt the electrical service to Appellants' neighbors for no ascertainable benefit. Appellants provided no testimony at trial, expert or otherwise, that would tend to suggest that the cable be moved for any engineering or utilitarian purpose. This demand for relief is neither reasonable nor equitable. Thus, I determined that greater injury would result from granting the requested injunction, particularly from a public policy standpoint as it would serve to encourage such frivolous lawsuits for the sake of one's ego, a fight, or whatever is motivating

13

Appellants here.

In light of the above, I did not err in denying Appellants' request for injunctive relief or in requiring some evidence of injury in support of any injunction. Indeed, the entry of nonsuit was proper as Appellants failed to meet their burdens in proving the necessary elements for injunctive relief. The case for a mandatory injunction must be made by a very strong showing, which Appellants failed to do at trial. My focus on the damages element (not necessarily monetary damages, in contrast to Appellants' claim) was clearly relevant in evaluating the elements necessary to establish a right to injunctive relief, including whether Appellants demonstrated an "urgent necessity" for said injunction or whether Appellants established that greater injury would result from denial of the injunction than by granting the relief requested. Appellants' contention that *Jones v. Wagner* is controlling precedent that I failed to consider is simply erroneous. Each of the cases cited by Appellants in support of the proposition that no damages must be proven in order to establish a right to injunctive relief concerns a continuing trespass and is, therefore, not applicable here. See, *Jones*, supra; *Olexa v. DeSales Univ.*, 78 Pa.D.& C.4th 171, 181 (Leh. Cty. 2005); *Americo Energy Resources, LLC v. Moore*, 2008 Tex. App. LEXIS 7644.

Upon consideration of the foregoing reasons, I respectfully request that the entry of nonsuit in favor of PECO be affirmed.

All of which is respectfully submitted.

BY THE COURT:

_____
Jeffrey R. Sommer                J.

14